**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| VICKIE L. BARNETTE and EARL BARNETTE, | * | |
| | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| VS. | * | CIVIL ACTION NO.: 2:06-cv-01030-MEF |
| | * | |
| DOLLAR TREE STORES, INC, et al., | * | |
| | * | |
| DEFENDANTS. | * | |

## PLAINTIFFS' MOTION TO REMAND

Come now the plaintiffs, Vickie L. Barnette and Earl Barnette, in the above styled action, and pursuant to 28 U.S.C. §1447, hereby move to remand this case back to the Circuit Court of Barbour County, Alabama, Eufaula Division, from whence it was improperly removed. As grounds hereto, Plaintiffs show the Court as follows:

## I.  INTRODUCTION

The Defendants' removal to this Court is without merit. The Defendants' primary basis for removal is that the resident defendant, Eugene Hamric was "fraudulently joined" and thus his citizenship should be disregarded for purposes of diversity jurisdiction. As described herein, plaintiffs vehemently dispute defendants' contention that plaintiffs Vickie L. Barnette and Earl Barnette have not asserted viable negligence and wantonness claims against defendant Eugene Hamric.

1

## II.  <u>FACTUAL BACKGROUND</u>

On October 19, 2006, plaintiffs, Vickie L. Barnette and Earl Barnette filed this action in the Circuit Court of Barbour County, Alabama.  The complaint alleges negligence and wantonness for injuries to Vickie L. Barnette as a result of a slip and fall at The Dollar Tree in Eufaula.  The claim of Earl Barnette is loss of consortium and is derivative of his wife's claim.

## III.  <u>ARGUMENT</u>

### A. <u>Fraudulent Joinder.</u>

The Defendants' primary basis for removal is that the resident defendant, Eugene Harmic was "fraudulently joined" and thus his citizenship should be disregarded for purposes of diversity jurisdiction.  The burden of proving fraudulent joinder rests with the defendants as the removing parties.  *See Crowe v Coleman, 113F.3d 1536, 1538 (11th Cir. 1997).*  In order to sustain a claim of fraudulent joinder, the Defendants must establish there is no possibility that any of the Plaintiffs can establish any cause of action against a non-diverse defendant.  *Id.*  The district court should resolve all questions of fact and controlling law in favor of the plaintiff.  *Cabalceta v Standard Fruit Company, 883F.2d 1553, 1561 (11th cir. 1989); Crowe, 113F.3d at 1538.*  If there is even a *possibility* that a state court would find that the complaint states a cause of action against *any one* of the resident Defendants, the federal court *must* find that joinder was proper and remand the case to the state court.  *Coker v Amoco Oil Company, 709 F.2d 1433, 1440 (11th Cir. 1983).*

The Plaintiffs vehemently dispute defendants' contention that the plaintiffs have not asserted viable state law claims for negligence and wantonness against all defendants including Eugene Hamric.  All defendants, including Eugene Hamric, were aware of the defective condition of premises at The Dollar Tree in Eufaula prior to the fall made the basis of this lawsuit.  More specifically,

defendant Dollar Tree was sued in a prior case for a fall at the same place as the fall in this case. See the pertinent part of the attached summons and complaint marked exhibit "1" dated September 16, 2003. Additionally, in July of 2005, the Dollar Tree paid money to settle its part of the case for the prior fall. See attached as exhibit "2". The plaintiffs believe that the defendant, Eugene Hamric was employed at The Dollar Tree in Eufaula while the prior lawsuit was pending and settled and knew or should have known of the defect in the condition of the premises and undertook no corrective action to make the premises reasonably safe for customers of the Dollar Tree. His affidavit attached to the Notice of Removal states he was involved in the day-to-day operation of the Dollar Tree Store. Obviously, the day-to-day operation of the store would include seeing to it that the premises were rendered safe for customers who might patronize the store. As manager, he had a duty to inspect the premises and render the same reasonably safe. He certainly knew or should have known of the defective condition of the premises and took no precautions to make the premises reasonably safe for customers of The Dollar Tree such as the plaintiff, Vickie L. Barnette, although, the day-to-day operation of Dollar Tree were his responsibility per his affidavit.

Where the plaintiff shows that defendant has had notice that other persons have fallen at the same location, this would support a claim of wantonness. *Mitchell v Moore, 406 So.2d 347.* Additionally, a viable cause of action exists when a fall on the sidewalk of one portion is one inch above the other. *Stephens v City of Montgomery, 575 So.2d 1095.* An operator of a business would owe a duty to invitees to have its facilities adequate for public use. *Well v Salmon Org., 567 So.2d 278.* Whether the irregularity of a sidewalk is defective or not is a factual matter and notice of this defect by the defendant is crucial. *Howard v Andy's Store for Men, 757 So.2d 1208.*

In the prior case, the plaintiff's expert was questioned about the ramp that is the subject

matter of this lawsuit.  Attached as plaintiffs' exhibit "3" is a copy of this part of his deposition.  He

testified as follows:

> "Q.  Did you determine the slope of the ramp?
> A.  I did.
> Q.  And do you remember what the slope of the ramp was?
> A.  Actually, it has two slopes to it.  And what I did. …it appears, based on the measurements
> we made, that there is a slope at the top of the ramp and that slope then changes as you
> proceed, about approximately 12 inches down the ramp, to a steeper slope. And based on the
> measurements, I show that slope to be 9.46 degrees, nine and a half degrees…"

At the time, the defendant Dollar Tree was present and represented by counsel.  This

testimony was rendered while The Dollar Tree was a defendant in the case and before any settlement

was made.  Attached as plaintiffs' exhibit "4" is a copy of the expert's report.  Therein, the expert

summarized, among other things, "the ramp is constructed such that approximately the first twelve

inches of the ramp are one slope, and then the ramp slope changes for the remaining thirty-six inches

where it ties into the parking lot."    On the drawing dated April 27, 2004 attached to the expert's

report and deposition, the expert indicates there is "no surface traction on ramp".

Based on all the foregoing, it is obvious that The Dollar Tree knew of the defective condition

of the premises because of the prior lawsuit.  Likewise, The Dollar Tree's employee, defendant

Eugene Hamric certainly knew or should have known of the defective condition of the premises and

took absolutely no precautions to guard against another fall happening.  The defendant Eugene

Hamric, as manager of the Eufaula Dollar Tree was vested with the day-to-day operation of the store

including the responsibility of maintaining the premises in a reasonably safe condition at the time of

the accident.  It is not necessary that he actually be on the premises at the exact time of the fall to be

vested with the day-to-day responsibility of maintaining the premises in a reasonably safe condition.

This was part of his continuing job whether he was physically present or not.  He could have

undertaken such simple and inexpensive corrective action as having the area where the fall occurred painted with a non-skid paint; putting non-skid strips on the surface of the ramp; placing warning signs or cones warning customers of the dangerous condition; taping off the area; or, making it inaccessible when wet, among other things. Even The Dollar Tree's own report of the fall shows that the handicapped access area where the accident happened was wet because it had been raining. These defendants knew this area did not have a non-skid surface which would make it easier for a customer to fall if the surface area was wet. Simply stated, Eugene Hamric nor Dollar Tree did anything to make the premises reasonably safe under the circumstances and now they want to stick their heads in the sand as though they had no knowledge of the prior fall and the likelihood it could happen again.

## IV. <u>CONCLUSION</u>

In summary, the plaintiff has alleged and can prove that the defendant Dollar Tree and its employee, Eugene Hamric, negligently and/or wantonly failed to maintain the premises of The Dollar Tree in Eufaula in a reasonably safe condition; that the plaintiff's fall resulted from a defect in the condition of the premises; that the defendant, Dollar Tree and its employee, Eugene Hamric were negligent or wanton in that they failed to take any corrective action to maintain the premises in a reasonably safe condition and that Dollar Tree and its employee, Eugene Hamric had notice of a defect since The Dollar Tree had previously been sued for a similar fall at the same spot. Consequently, the plaintiffs have alleged a viable cause of action against Eugene Hamric that would be cognizable under Alabama state law and federal law as well. It is not necessary at this stage of the case for the plaintiffs to prove that they would have to be successful in the case to avoid removal. Based on the citations of authority cited herein, it is only necessary that plaintiffs set forth a viable cause of action under applicable law. Plaintiffs feel they have a viable and meritorious claim against

defendant Eugene Hamric. In short, not only have the plaintiffs alleged a viable claim against

defendant Eugene Hamric that would defeat any removal for "fraudulent joinder", the plaintiffs have

alleged a cause of action for which they have a reasonably good chance of being successful.

Consequently, this case is due to be remanded to the Circuit Court of Barbour County, Alabama,

Eufaula Division.

WHEREFORE, plaintiffs move the Court to dismiss the Notice of Removal and remand the

case to the Circuit County of Barbour County, Alabama, Eufaula Division, accordingly.


/s/ **Russell Lee Irby**
Russell Lee Irby
Attorney for Plaintiffs
Post Office Box 910
Eufaula, AL 36072-0910

OF COUNSEL:
Irby Law Firm, LLC
P.O. Box 910
Eufaula, AL 36072

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| VICKIE L. BARNETTE and EARL BARNETTE, | * | |
| | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| VS. | * | CIVIL ACTION NO.: 2:06-cv-01030-MEF |
| | * | |
| DOLLAR TREE STORES, INC, et al., | * | |
| | * | |
| DEFENDANTS. | * | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2006, I electronically filed the foregoing Plaintiffs' Motion to Remand with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

Rick A. Howard, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, AL 36103

James L. Martin, Esq.
P.O. Box 14
Eufaula, AL 36072

And by U.S. mail to Megan K. McCarthy, Attorney at Law, Nix, Holtsford, Gilliland, Higgins & Hitson, P.C., P.O. Box 4128, Montgomery, AL 36103 by placing a copy of same in the United States mail, postage prepaid and properly addressed.

/s/  **Russell Lee Irby**
Russell Lee Irby

OF COUNSEL:
Irby Law Firm, LLC
P.O. Box 910
Eufaula, AL 36072

**7**

**8**



PLAINTIFF'S
EXHIBIT

1

IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION

GAYLE WILLIAMS,                                    *

                                                  *

      PLAINTIFF,                              *

                                                  *

VS.                                               *          CIVIL ACTION NO.: CV-03-

                                                  *

PRIDE MOBILITY PRODUCTS, CORP., THE SCOOTER STORE, INC., DOLLAR TREE, INC.,
GVM PARTICIPATING PARTNERSHIP AND FICTITIOUS DEFENDANTS "A", "B" "C", "D",
"E", "F", "G","H", "I", "J", "K", "L", "M","N", "O", "P" and "Q", WHETHER SINGULAR OR
PLURAL, THAT ENTITY WHO OR WHICH DESIGNED THE ELECTRIC WHEELCHAIR
INVOLVED IN THE OCCURENCE MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT, ANY
COMPONENT THEREOF OR ANY ATTENDANT EQUIPMENT USED OR AVAILABLE FOR USE
THEREWITH WHETHER SINGULAR OR PLURAL, THAT ENTITY, WHO OR WHICH
MANUFACTURED OR ASSEMBLED THE ELECTRIC WHEELCHAIR INVOLVED IN THE
OCCURRENCE MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT, ANY COMPONENT
THEREOF, OR ANY ATTENDANT EQUIPMENT USED OR  AVAILABLE FOR USE
THEREWITH WHETHER SINGULAR OR PLURAL, THAT ENTITY WHO OR WHICH HAD ANY
ROLE IN THE DISTRIBUTIVE CHAIN REGARDING THE ELECTRIC WHEELCHAIR
INVOLVED IN THE OCCURRENCE MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT OR
ANY COMPONENT PART THEREOF OR ANY ATTENDANT EQUIPMENT USED OR
AVAILABLE FOR USE THEREWITH; WHETHER SINGULAR OR PLURAL, THAT ENTITY OR
THOSE ENTITIES WHO OR WHICH PRIOR TO THE OCCURRENCE MADE THE BASIS OF
THIS LAWSUIT ALTERED OR REPAIRED THE ELECTRIC WHEELCHAIR INVOLVED IN
SAID OCCURRENCE, ANY COMPONENT THEREOF, OR ANY ATTENDANT EQUIPMENT
USED OR AVAILABLE FOR USE THEREWITH; WHETHER SINGULAR OR PLURAL, THAT
ENTITY OR THOSE ENTITIES THAT INDIVIDUAL OR THOSE INDIVIDUALS OTHER THAN
THOSE DESCRIBED ABOVE, WHOSE NEGLIGENCE, INTENTIONAL CONDUCT,
WILFULNESS, BREACH OF CONTRACT, WANTONNESS OR OTHER WRONGFUL CONDUCT
CONTRIBUTED TO, CAUSED THE OCCURRENCE MADE THE BASIS OF THE PLAINTIFF'S
COMPLAINT; WHETHER SINGULAR OR PLURAL, THAT ENTITY OR THOSE ENTITIES
OTHER THAN THOSE DESCRIBED ABOVE, WHICH IS THE SUCCESSOR IN INTEREST OF
ANY OF THOSE ENTITIES DESCRIBED ABOVE, WHETHER SINGULAR OR PLURAL, THAT
ENTITY WHO OR WHICH WAS RESPONSIBLE FOR THE SAFETY, ENGINEERING OF THE
ELECTRIC WHEELCHAIR MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT; WHETHER
SINGULAR OR PLURAL, THAT ENTITY WHO OR WHICH WAS THE BUYER, SELLER OR AS
A BUYER OR SELLER'S AGENT OR REPRESENTATIVE HAD ANY ROLE IN THE
DISTRIBUTION OF THE ELECTRIC WHEELCHAIR INVOLVED IN THE OCCURRENCE MADE
THIS BASIS OF THE PLAINTFF'S  COMPLAINT; WHETHER SINGULAR OR PLURAL, THAT
ENTITY WHO OR WHICH ISSUED OR FAILED TO ISSUE WARNING OR INSTRUCTIONS
REGARDING THE USE OF THE WHEELCHAIR MADE THE BASIS OF THE PLAINTIFF'S
COMPLAINT; WHETHER SINGULAR OR PLURAL THAT ENTITY WHO OR WHICH
MANUFACTURED THE COMPONENT OF THE ELECTRIC WHEELCHAIR INVOLVED IN THE
OCCURRENCE MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT; WHETHER
SINGULAR OR PLURAL, THAT OR ENTITY WHO OR WHICH AS A BUYER, SELLER OR AS A
BUYER OR SELLER'S AGENT HAD ANY ROLE IN THE DISTRIBUTION OF ANY
COMPONENT PART OF THE ELECTRIC  WHEELCHAIR MADE THE BASIS OF THE

PLAINTIFF'S COMPLAINT; WHETHER SINGULAR OR PLURAL THAT ENTITY WHO OR WHICH ISSUED WARNINGS OR INSTRUCTIONS REGARDING THE USE OF ANY COMPONENT PART OF THE ELECTRIC WHEELCHAIR INVOLVED IN THE OCCURRENCE MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT; WHETHER SINGULAR OR PLURAL THAT PERSON, FIRM, CORPORATION OR ENTITY WHO OR WHICH HAD CONDUCTED SAFETY INSPECTIONS OR ANALYSES WITH RESPECT TO ASSEMBLING THE ELECTRIC WHEELCHAIR MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT; WHETHER SINGULAR OR PLURAL THAT ENTITY WHO OR WHICH DESIGNED, CONSTRUCTED AND/OR MAINTAINED THE SIDEWALK, WHEELCHAIR RAMP AND CURB OF THE PREMISES MADE THE BASIS OF THE PLAINTIFF'S COMPLAINT; THE PLAINTIFF AVERS THAT THE IDENTITIES OF THE FICTITIOUS DEFENDANTS HEREIN ARE OTHERWISE UNKNOWN TO PLAINTIFF, THEIR IDENTITIES AS PROPER PARTY DEFENDANTS ARE NOT KNOWN TO PLAINTIFF AT THIS TIME, AND THEIR TRUE NAMES WILL BE SUBSTITUTED BY AMENDMENT WHEN ASCERTAINED;

Defendants.

## SUMMONS

Notice to:

The Dollar Tree Store, Inc.
1451 S. Eufaula Ave.
Eufaula, AL 36027

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFF'S ATTORNEYS, RUSSELL LEE IRBY, WHOSE ADDRESS IS P.O. BOX 910, EUFAULA, AL 36072-0910 AND ALBERT H. ADAMS, JR., WHOSE ADDRESS IS POST OFFICE BOX 910, EUFAULA, ALABAMA 36072-0910.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

This service by certified mail of this summons is initiated upon the written request of plaintiff's attorneys, Russell Lee Irby and Albert H. Adams, Jr., pursuant to Rule 4.1 (c) of the Alabama Rules of Civil Procedure.

_____    _____
Date                  Clerk/Register

RETURN OF SERVICE:

Certified Mail return receipt received in this office on (Date)_____(Return receipt hereto attached)

which they were intended to be used, but to the contrary, said electric wheelchair and/or its component

parts were not reasonable fit and suitable for the purposes for which they were intended to be used, but to

the contrary, said electric wheelchair and/or its component parts were unmerchantable and commercially

unfit quality. The Plaintiff further claims that as a proximate result of the aforesaid breach of warranties

by the Defendants, including the fictitious party Defendants, the Plaintiff was caused to be injured and

damaged.

26. 25. As a proximate result of the aforesaid breach of implied and/or expressed warranties of,

Pride Mobility Products, Corp., The Scooter Store, Inc., and Fictitious Defendants, the Plaintiff was

injured and damaged as set above.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages against these

Defendants in such sum as a jury may award, plus costs and interest.

## COUNT FOUR

### (Negligent Design and Construction)

26. Plaintiff readopts and realleges all allegations contained in paragraphs 1 through 25 of the

Complaint as if set out here in full.

27. The defendants, GVM Participating Partnership and The Dollar Tree, Inc and Fictitious

Defendants negligently and/or wantonly designed, engineered, manufactured, constructed and maintained

the aforesaid sidewalk, wheelchair ramp and/or curb located on the premises at 1451 South Eufaula

Avenue in Eufaula, Alabama.

28. As a proximate consequence of this negligence and/or wantonness of the defendants

GVM Participating Partnership and The Dollar Tree, Inc. and Fictitious Defendants, the plaintiff was

injured and damaged, as set forth above.

WHEREFORE, the plaintiff demands judgment for compensatory and punitive damages

Against defendants GVM Participating Partnership and The Dollar Tree, Inc. and Fictitious Defendants,

in such sum as a jury may award, plus costs and interest.

## COUNT FIVE

### (Concurring and Combined Negligence)

29.    The plaintiff readopts and realleges all prior allegations contained in the paragraphs 1 through 28 of the complaint as set forth again in full.

30.    The negligence, wantonness or otherwise wrongful conduct of Defendants Pride Mobility Products, Corp., The Scooter Store, Inc., GVM Participating Partnership and The Dollar Tree, Inc., and Fictitious Defendants as alleged herein combined and concurred to cause the Plaintiff to suffer severe injuries and damages.

31.    As a proximate result of the aforesaid conduct of all Defendants and Fictitious Defendants, the Plaintiff was injured and damaged as set forth again in full.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages against all Defendants in such sum as a jury may award, plus costs and interest.


**ALBERT H. ADAMS Jr. (ADA058)**
**Attorney for Plaintiff**
P.O. Box 910
Eufaula, Alabama 36072-0910
(334) 687-6672

**RUSSELL L. IRBY (IRB001)**
**Attorney for Plaintiff**
P.O. Box 910
Eufaula, AL 36072-0910


## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues in this cause.


**OF COUNSEL**

PLAINTIFF'S
EXHIBIT

2

STATE OF ALABAMA )

COUNTY OF BARBOUR)

## PRO TANTO RELEASE AND INDEMNITY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS that the undersigned, GAYLE WILLIAMS, for

and in consideration of the sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00) cash in

hand paid to me on this date by DOLLAR TREE STORES and SPECIALTY RISK SERVICES, and

for other good and valuable consideration the receipt whereof in full is hereby acknowledged there

being no promises of further benefit or payment to be received, has for herself and each of her

respective heirs, administrators, executors, and assigns released, remised, acquitted and discharged

forever the said DOLLAR TREE STORES and SPECIALTY RISK SERVICES, their heirs,

executors, administrators and assigns, and their servants, agents, employees and insurers, jointly and

severally of and from any and all claims, demands, actions, causes of action, suits, costs, damages,

expenses, compensation and liability of every kind, character and description, either direct or

consequential, at law or in equity which the undersigned may have now, may have had at any time

heretofore or may have at any time hereafter arising from, resulting from, or in any manner incidental

to that certain incident which occurred on or about the 9th day of August, 2003, in Barbour County,

Alabama, and made the basis of that certain lawsuit filed in the Circuit Court of Barbour County,

Alabama, being styled Gayle Williams v. Pride Mobility Products Corp., et al, having case number

CV-03-179.

And, in further consideration of the payment to the undersigned of the said sum of FIVE

THOUSAND AND NO/100 DOLLARS ($5,000.00) cash, as aforesaid, and for other good and

valuable consideration, the receipt whereof in full is hereby acknowledged, the undersigned hereby

covenants and agrees on behalf of herself and her respective heirs, executors, administrators and

assigns, to protect, indemnify and save harmless the said DOLLAR TREE STORES and

SPECIALTY RISK SERVICES, their respective heirs, executors, administrators and assigns, and their servants, agents, employees, and insurers, and any and all other persons, firms and corporations, jointly and severally from and against any and all claims, actions, causes of action, suits, costs, damages, expenses, compensation and liabilities of every kind, character and description either direct or consequential which they, their respective heirs, administrators, executors, assigns, guardians, or any other person may have now, may have had at anytime heretofore or may have anytime hereafter at law or in equity, which demands, costs, expenses and compensation are on account of or in any manner growing out of that certain incident which allegedly occurred on or about the 9th day of August, 2003, and made the basis of said lawsuit; including but not limited to, any claims for subrogation by any health carrier or other payor, arising from payments or reimbursement to or on behalf of the undersigned or in consequence of the undersigned's injuries or damages arising from said accident, which claims or liens the undersigned agrees to compromise, pay and/or otherwise satisfy from the proceeds of this settlement.

It is the specific intent and purpose of the undersigned to release only DOLLAR TREE STORES and SPECIALTY RISK SERVICES, and such release is a partial and pro tanto release not intended to release any other parties or persons, firms, or entities that might be responsible in whole or in part for that specific incident which occurred on or about the 9th day of August, 2003. It is the particular and specific intention of the parties to this agreement that it not affect any cause of action, right of action, or any pending civil action, either filed or unfiled, against any other persons, firms, corporations, parties or other entities who or which may be responsible in whole or in part for the incident which allegedly occurred and which is referred to hereinabove. It is understood that the undersigned does not release from liability and hereby expressly reserves any and every claim or cause of action that the undersigned now has or may hereafter have against any person, firm or

corporation other than those parties herein released, on account of or in consequence of said incident referred to above.

The undersigned agrees and understands that the payment of the aforesaid sum is solely for the purposes of compromising a disputed claim and that said payment is not to be construed as an admission of liability upon the part of any persons, firms, corporations, partnerships or other entities hereby released and indemnified, by whom liability is expressly denied.

The undersigned does further state that they have carefully read the foregoing release, that they know and understand the contents of the said release, the same having been fully explained to them by their counsel of record, and that by execution of this release, they direct their counsel of record to cause those certain lawsuits which were heretofore filed in the Circuit Court of Barbour County, Alabama, to be dismissed, with prejudice, as to the Defendant, DOLLAR TREE STORES and SPECIALTY RISK SERVICES, and its agents, servants, employees and insurers, and that this release document is executed as their own free act and deed on this the 21st day of July, 2005.

_Gayle Williams_
GAYLE WILLIAMS

STATE OF ALABAMA

COUNTY OF BARBOUR

I, the undersigned Notary Public in and for said County in said State, hereby certify that Gayle Williams, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this 21 day of July, 2005.

_____
NOTARY PUBLIC
My commission expires: 2/25/08

PLAINTIFF'S
EXHIBIT

3

```
 1        IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

 2                        EUFAULA DIVISION

 3   GAYLE WILLIAMS,              )
            Plaintiff,           )
 4                               )
        VS.                      )
 5                               )
     PRIDE MOBILITY PRODUCTS     )
 6   CORP, et al.,               )
            Defendants.          )

 7

 8        The deposition of DAVID HATFIELD, taken

 9   by the Defendants, pursuant to the Alabama Rules of

10   Civil Procedure, before Kimberly B. Faucette, Certified

11   Court Reporter and Notary Public in and for the State of

12   Alabama at Large, at the law offices of Albert Adams,

13   Eufaula, Alabama, on the 18th day of March, 2005, at

14   10:00 a.m., pursuant to notice.

15                *     *     *     *     *

16   APPEARANCES:

17   FOR THE PLAINTIFF:              FOR PRIDE MOBILITY:

18   MR. ALBERT H. ADAMS             MR. ALAN C. LIVINGSTON
     Attorney at Law                 Attorney at Law
19   Eufaula, Alabama                Dothan, Alabama

20   FOR THE SCOOTER STORE:          FOR GERMANS:

21   MR. WILLIAM PATTY               MR. JAMES L. MARTIN
     Attorney at Law                 Attorney at Law
22   Montgomery, Alabama             Eufaula, Alabama

23   FOR DOLLAR TREE:

24   MR. BRIAN MILLER
     Attorney at Law
25   Mobile, Alabama
```

1    that is involved in this case?

2        A    Yes, sir.

3        Q    And I am going to mark the disc itself as

4    Exhibit Number 17, and then we will get a copy of the

5    photographs that are contained on that disc made.

6    I think Albert said he could copy it for us.

7                (Thereupon, Defendant's Exhibit No. 17

8                 was marked for identification.)

9        Q    Now, Exhibits 1 through 17, constitute your

10   entire file, regarding your analysis and work in this

11   case; is that correct?

12       A    Yes, sir.  With the exception of the

13   Architectural Graphics Standards book that you

14   requested, that I forgot and left at home.

15       Q    You told me that your first thing that you

16   understood you were being requested to do was analyze

17   the ramp.  Did you do that?

18       A    Yes, sir.

19       Q    Did you determine the slope of the ramp?

20       A    I did.

21       Q    And do you remember what the slope of the ramp

22   was?

23       A    Actually, it has two slopes to it.  And what I

24   did -- It appears, based on the measurements we made,

25   that there is a slope at the top of the ramp, and that

52

1    slope then changes as you proceed, about approximately

2    12 inches down the ramp, to a steeper slope.  And all I

3    analyzed was the overall slope.  And based on my

4    measurements, I show that slope to be 9.46 degrees, nine

5    and a half degrees.

6        Q    So what you are saying is the top 12 inches or

7    so of that ramp is a different slope than the bottom?

8        A    That is what it appears to me.

9        Q    But the combined of the two slopes is 9.46?

10       A    Yes, sir.

11       Q    Degrees or percent?

12       A    Degrees.

13       Q    So the top part of that would be a little bit

14   less than that, and the bottom part would be a little

15   bit more than that?

16       A    Yes, sir.

17       Q    And what is your understanding of the maximum

18   allowable slope for a ramp such as the ramp at the

19   Dollar Tree store?

20       A    I can't answer that question, because I don't

21   know when the building was built, when it was

22   constructed, whether it had to comply with ADA, whether

23   there were any alterations to the building that brought

24   it into ADA, if it was built prior to when ADA came into

25   effect, or altered after ADA came into effect.  I can



Timothy P. Barrett, P.L.S.
*President*
George W. Barrett, P.L.S.
*Vice President*

Everett N. Maxey, P.E.
David A. Hatfield, P.E.
Eddie A. Eubanks, P.L.S.
Joseph S. Gatewood

**BARRETT-SIMPSON, INC.**

*Civil Engineers & Land Surveyors*

PHENIX CITY  •  EUFAULA  •  AUBURN

July 25, 2005

Mr. Albert Adams, Esq.
Law Office of Russell Irby, LLC
Post Office Box 910
257 West Broad Street
Eufaula, Alabama 36072

**PLAINTIFF'S
EXHIBIT**

4

*RE:*  ***Mrs. Gayle Williams Jet Power Chair
Initial Stability Tests***

Dear Albert:

I have completed an initial series of stability tests on the Jet Power Chair. These tests were performed to determine the stability of the chair while operating on incline ramps. The particular ramp of concern is located at the Dollar Tree in Eufaula, Alabama. As you recall, a site visit to the Dollar Tree store was conducted on April 27, 2004. One purpose of this visit was to obtain geometric characteristics of the handicapped access ramp. The sketches relating to this work are attached hereto. Note the sketch is labeled as Defendant's Exhibit 6 since this information was also contained in my recent deposition.

The handicapped access ramp to the store is composed of a dual slope ramp which is inherently unsafe and not noticeable to the user. The ramp is constructed such that approximately the first twelve inches of the ramp are at one slope, and then the ramp slope changes for the remaining thirty-six inches where it ties into the parking lot. Note the initial slope is less than the final slope. The overall ramp slope was calculated to be 9.46 degrees; however, the actual slope of the steeper grade is greater than this average slope. An accurate slope measurement can be obtained by profiling the ramp utilizing field survey instrumentation. It should be noted the ramp, as constructed, does not meet current American's with Disabilities Act requirements. It is my understanding this Act requires maximum ramp slopes of approximately five degrees (1" Vertical to 12" Horizontal). Steeper slopes are allowed for existing facilities contingent upon the maximum rise being equal to or less than six inches. The Dollar Tree ramp requires a rise of eight inches. Note the power chair manufacturer recommends five degrees as the maximum slope on which the chair should be operated. See page 8 entitled Defendant's Exhibit 7 in my deposition dated March 18, 2005, for this restriction.

On June 24, 2005, I conducted several stability tests of the power chair at the residence of Mrs. Gayle Williams. These tests involved determining the stability of the chair in the occupied condition and in the unoccupied condition. The attached sheet depicts the test results. Note for an unoccupied chair, the chair was stable at an angle of 11.49 degrees. The actual tip angle of an unoccupied chair was not determined. The chair was next tested for stability while occupied by

Mrs. Gayle Williams. The chair was stable at an angle of 7.59 degrees; however, the chair becomes unstable at approximately 9.09 degrees.

Mrs. Williams stated in her deposition she was unassisted as she was descended the ramp, and when she began tipping she let go of the joystick which stops the chair. However, the chair kept going forward and threw her out. See Plaintiff's deposition at pages 54 and 57. Further, Mrs. William's indicates the instability occurred at the approximate location where the ramp slope changes. See Plaintiff's deposition at pages 56 and Defendant's Exhibit 2 of this same deposition.

It is my opinion the tipping of the chair was caused by two factors. These factors are the ramp design and the power chair design. For the power chair to tip when descending a ramp, the resultant gravitational force acting through the center of gravity of the chair system (i.e. the chair and its occupant) must pass forward of the drive wheel ramp contact point. The tests conducted upon the chair on June 24 indicate this action occurs at an incline angle of 9.09 degrees, which is less than the average ramp slope of 9.46 degrees. Hence, based upon my understanding of the facts relating to this matter, the chair became unstable as Mrs. Williams proceeded past the ramp grade change. This ramp grade change exacerbated the chair's instability by allowing the anti-tip wheels a larger vertical range of motion. The chair proceeded to rotate forward as Mrs. Williams attempted to bring the chair to a full stop. The steeper incline increased the system's instability, and the chair continued to pitch forward.

It is interesting to note Mrs. Williams navigated this ramp successfully in the past; however, these successful passages were always accompanied by assistance from a mobile pedestrian. The assistance consisted of her husband either holding on to her or holding onto the chair during ramp descent. See Plaintiff's deposition at pages 54 and 55. This added assistance would prevent the chair from becoming instable thereby allowing successful navigation of the ramp.

It is my professional opinion this accident would have been avoided if the ramp was constructed with a continuous five degree slope, or if the center of gravity of the chair system was further aft of its actual point, or if the power chair was manufactured with an inclinometer to warn the user. As stated above, the manufacturer does not recommend utilizing the chair on slopes greater than five degrees. Since access ramps are not marked with an incline angle, it is incumbent upon the user of the ramp to ascertain this angle from sight alone, a task which I do not believe is possible for untrained individuals.

An inclinometer is a simple device that measures pitch or incline angles. A device as simple as a liquid level marked with pitch angles would provide the user with actual access ramp angles. Of course, the only way this device would warn the user that the ramp exceeded the five degree allowable slope would be during or after ramp transverse. However, the chair is

inherently more stable during ascent than during descent. Hence, if a user were negotiating a ramp of questionable slope, it is most likely that the travel direction would be uphill in order to access a facility. The simple gage would indicate to the user whether the ramp's slope was within the range of negotiable inclines. If the slope was outside the safe range, the user could simply ask for assistance in descending the access way. Further, experience gained by comparing actual slopes measured by the inclinometer with visual indicators would aid the user in identifying dangerous pathways. And lastly, ramps of unknown slope angles could always be negotiated with the assistance of a helper, and the ramp's slope could be determined and evaluated for safety. Note also, my tests on June 24 included operating the chair and evaluating the feasibility of utilizing a liquid level to ascertain ramp inclines. These tests indicated the addition of an inclinometer would provide the user with ramp incline angles.

Please be aware that the Defendant, Pride Mobility Products, did not supply the requested dimensional assembly drawing of the chair; hence, all dimensions utilized in the calculations are based upon measurements taken in the field. These field measurements may vary slightly from actual dimensions due to field conditions. Note my opinions expressed in this letter are based upon my current understanding of the facts, and the discovery of additional information or clarification of the issues relating to this matter could alter these opinions. Thank you for allowing Barrett-Simpson, Inc. the opportunity to assist with your investigation into this matter. Please contact me with any questions or concerns.

Sincerely,
***Barrett-Simpson, Inc.***

David A. Hatfield, P.E.
Project Engineer

Enc.    As noted

c.      File

